**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIMOTHY FRANKS<br>65 MacAarthur Avenue<br>Franklinville, NJ 08322<br><br>Plaintiff,<br><br>v.<br><br>NEW HUDSON FACADES, LLC<br>815 Columbia Avenue<br>Linwood, PA 19061<br><br>Defendant. | : | CIVIL ACTION<br><br>CASE NO.: 22-1537 |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Timothy Franks (*hereinafter* referred to as "Mr. Franks" or "Plaintiff") against New Hudson Facades, LLC, (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§12101 *et. seq.*), the Family Medical Leave Act ("FMLA" - 29 U.S.C. § 2611 *et seq.*), the Fair Labor Standards Act, ("FLSA" - 29 U.S.C.A. § 201 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law

claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

**PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant is a is a custom architectural façade company specializing in the design, engineering, manufacturing, and installation of facades on world class buildings.

8. Defendant operates a manufacturing facility located at 815 Columbia Avenue, Linwood, PA 1906 (the "Linwood Facility").

9. At all times material, Defendant employed Plaintiff at the Linwood Facility.

10. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

11. Defendant is an "employer" within the meaning of the ADA because Defendant employed at least fifteen (15) or more full-time employees within the present or preceding calendar year for at least twenty (20) calendar weeks and engages in a business that affects interstate commerce.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Defendant employed Mr. Franks as a Machine Operator for approximately two years, from in or about December 2019 until unlawfully terminating him on January 24, 2022.

14. Mr. Franks was supervised primarily by Defendant's Machine Supervisor, Timothy O'Hara ("O'Hara") and Defendant's Plant Manager, Rich Latella ("Latella").

15. In or about November of 2020, Mr. Franks' wife was diagnosed with Congestive Heart Failure (CHF), and associated conditions/complications, for which she was hospitalized.

16. As a result, Mr. Franks requested/utilized intermittent medical leave to care for his wife's serious medical conditions as needed; instead of properly notifying Mr. Franks of his right to take FMLA, Defendant instead required Mr. Franks to use PTO.

17. Ultimately, in or about April of 2021, Mr. Franks formally pursued intermittent FMLA to care for his wife's serious medical conditions, including but not limited to taking her to doctor's visits and for treatment.

18. On or about May 11, 2021, Mr. Franks submitted signed FMLA paperwork from his wife's doctor to O'Hara.

19. Shortly thereafter, on or about May 19, 2021, Defendant issued Mr. Franks a verbal warning for being 4 days over his PTO allotment, despite the fact that Defendant's management and HR knew that he had requested FMLA leave for same.

20. On or about May 26, 2021, Mr. Franks reached out to HR representative Dave Riccio ("Riccio") to check on the status of his FMLA approval, but Riccio simply stated "I haven't had a chance to look at it yet."

21. Thereafter, for the next several weeks, Defendant subjected Mr. Franks to increasing hostility, animosity, and harassment for reasons associated with his wife's serious health conditions and/or utilizing FMLA leave for same.

22. By way of example, but not intended to be an exhaustive list:

(1) Defendant's management began to closely monitor, scrutinize, and follow Mr. Franks' every move, essentially singling him out, while he performed his work duties;

(2) Defendant's management, including but not limited to O'Hara, exhibited clear animosity and frustration whenever Mr. Franks requested FMLA leave for his wife's serious medical conditions;

(3) On or about July 8, 2021, O'Hara handed Mr. Franks a torn piece of paper with nine (9) dates on it, and verbally berated him, stating "only two (2) days are excused," despite that nearly all the dates were FMLA-qualifying leave for his wife's serious medical conditions.

23. Mr. Franks reached out that same day (July 8, 2021) to HR to confirm whether his FMLA leave had been approved, to which Riccio replied, "yes," and vaguely stated that he "thought we had already discussed it."

24. Mr. Franks further complained to Riccio that he was being harassed and treated unfairly as a result of requesting FMLA leave for his wife's serious health conditions, including being told by management that he should "resign" and that FMLA leave "will not save [your] job."

25. However, instead of meaningfully investigating Mr. Franks' aforesaid complaints of discrimination and retaliation, on or about July 14, 2021, Defendant informed Mr. Franks that he would be disciplined for taking FMLA qualifying absences to care for his wife's serious medical conditions.

26. Just one week later, on or about July 21, 2021, Defendant issued Mr. Franks a written warning for absenteeism, despite that Mr. Franks' absences were FMLA qualifying leave to care for his wife's serious medical conditions.

27. Defendant's management and employees continued to harass Mr. Franks for taking FMLA leave, including intimidating him and his family with physical violence, aggressive and discriminatory comments and racial obscenities, ignoring his requests for help. One co-worker, Chala (last name unknown, hereinafter "Chala"), mockingly advised Mr. Franks "not to cut [your] grass when [you] are home on FMLA."

28. Mr. Franks continued to report and complain about the discriminatory and retaliatory treatment he was being subjected to.

29. In or around late September of 2021, a co-worker, Chris (last name unknown, hereinafter "Chris") informed Mr. Franks that management was looking for reasons to fire him, and that one employee, Jake Skinner (hereinafter "Skinner"), had been coming in early and staying late to monitor Mr. Franks' clock in and out times, hoping to find a reason to terminate him.

30. Thereafter, on or about October 28, 2021, Mr. Franks came to work after utilizing a day of FMLA leave to find that O'Hara had falsely informed Riccio that Mr. Franks had called him and resigned, despite the fact that O'Hara knew he had taken FMLA for his wife's serious medical conditions and not resigned. This was completely untrue, as Mr. Franks never resigned from his position with Defendant.

31. For the next several weeks, Mr. Franks attempted to reach out to Riccio and O'Hara regarding the status of his FMLA eligibility/leave, including but not limited to how many days of FMLA leave that he had remaining; however, Riccio was never available, and O'Hara refused to respond to his inquiries. As a result, Mr. Franks continued to take intermittent FMLA leave as needed for his wife's serious health conditions, providing doctor's notes when requested.

32. On or about January 13, 2022, O'Hara presented Mr. Franks with a new employee handbook which had updated FMLA policy. Despite the acknowledgment not needing to be signed until January 31, 2022, O'Hara repeatedly pressured Mr. Franks to sign it sooner.

33. On or about January 22, 2022, Mr. Franks again complained to Riccio, regarding concerns that he had still not been provided with information regarding his FMLA time remaining and that both Riccio and O'Hara had been ignoring Mr. Franks' repeated questions regarding same.

34. Mr. Franks also complained to Riccio that Latella and O'Hara were illegally docking employees' pay 30 minutes each time they forget to clock in or out and requested a report of his log in and out times to ensure his pay was not being illegally deducted as well.

35. However, instead of meaningfully investigating or addressing Mr. Franks' concerns, Defendant summoned Mr. Franks to a meeting two days later on January 24, 2022, with several individuals present including O'Hara, Riccio, and Latella. During the meeting Latella berated and belittled Mr. Franks, calling his use of FMLA time "a joke" and yelling at him for complaining about unlawful pay practices.

36. Defendants then terminated Mr. Franks for an alleged "safety issue" – allowing his daughter to use a restroom in the Linwood Facility nearly three weeks prior on January 6, 2022.

37. Defendant's purported reason for terminating Mr. Franks is pretextual because (1) Mr. Franks had asked, and been approved and escorted by security, for permission to let his

daughter use the restroom; (2) Latella had been aware of Mr. Franks daughter using the restroom on January 6, 2022, spoke with Mr. Franks about it, but did not impose any discipline and merely told Mr. Franks to avoid it in the future; (3) other employees have had their children on facility premises (sometimes for an entire day), without being provided discipline or terminated for same; and (4) Mr. Franks was terminated just three days after exercising his FMLA rights, complaining of FMLA violations, as well as safety and potential wage violations by Defendant for an alleged incident that took place nearly three weeks prior.

38. Defendant's actions as set forth herein violate the ADA.

39. Defendant's actions also constitute interference and retaliation under the FMLA.

**Count I**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Retaliation & Interference)**

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

42. Plaintiff requested FMLA leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).[1]

43. Plaintiff had at least 1,250 hours of service with Defendant during the 12-month period immediately preceding his request for FMLA leave.

[1] As referenced *supra*, 29 C.F.R. § 825.110(b) provides that "The 12 months an employee must have been employed by the employer need not be consecutive months" and that in general, employment within seven years is counted towards the FMLA's 12-month requirement.

44. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

45. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

46. Defendant committed interference and retaliation violations of the FMLA by: (1) using Plaintiff's requests for FMLA, the exercising of his FMLA rights and/or Plaintiff's utilization of FMLA-qualifying leave as a motivating or determinative factor in his discipline/termination; (2) considering Plaintiff's FMLA leave needs in making the decision to discipline/terminate him; (3) a negative performance evaluation solely due to his absences to care for his wife; (4) terminating Plaintiff while he was still eligible for FMLA-qualifying medical leave; (5) intimidating and terminating Plaintiff to prevent him from taking further FMLA-qualifying leave; (6) making false and misleading comments and/or taking actions towards Plaintiff that would dissuade a reasonable person from exercising his rights under the FMLA; and (7) refusing to provide him with required notices and information.

47. These actions as aforesaid constitute violations of the FMLA.

**COUNT II**
**Violations of the Americans with Disabilities Act ("ADA")**
**([1] Discrimination on the basis of association with a disabled individual; and [2] Retaliation)**

48. The foregoing paragraphs are fully incorporated herein as though set forth at length.

49. The ADA, 42 U.S.C.A. §§ 12101 et. seq. prohibits employment discrimination based on the known disability of an individual with whom the employee is known to have a relationship or association.

50. At all times relevant to this Complaint, Mr. Franks' wife was a disabled individual suffering from Congestive Heart Failure.

51. At all times relevant to this Complaint, Defendant knew that Mr. Franks' wife was a disabled individual.

52. Defendants granted Mr. Franks FMLA leave on the basis of his wife's Congestive Heart Failure.

53. Defendant knew of Mr. Franks' wife's disability and her relationship with Mr. Franks.

54. Defendant subjected Mr. Franks to intentional discriminatory employment practices including, but not limited to, the following: (a) discriminating against Mr. Franks in terms of work conditions; (b) a negative performance evaluation solely due to his absences to care for his wife; (c) unwarranted discipline for utilizing FMLA leave to care for his wife; and (d) discriminating against Mr. Franks by terminating his employment.

55. These actions constitute unlawful discrimination and retaliation pursuant to the ADA.

**COUNT III**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Retaliatory Termination)**

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. Plaintiff engaged in protected activity under the FLSA by questioning and complaining about Defendant's unlawful pay practices of docking employees' hourly time for forgetting to clock in or out.

58. Plaintiff was terminated just two (2) days later for questioning and complaining of Defendant's unlawful pay practices.

59. Such actions as aforesaid constitute indefensible violations of the Fair Labor Standards Act ("FLSA").

**COUNT IV**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Discrimination on the basis of association with a disabled individual; and [2] Retaliation)**

60. The foregoing paragraphs are fully incorporated herein as though set forth at length.

61. Plaintiff re-asserts his allegations as set forth *herein*, as same equally constitute violations of the PHRA.

62. These actions constitute unlawful discrimination and retaliation pursuant to the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive damages and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

E. Plaintiff is to be given a jury trial as demanded in the caption of the instant Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: *Christine E. Burke*
________________________________

Ari R. Karpf, Esq.
Christine E. Burke, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: January 31, 2023